UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

APRIL YOUNG,

    Plaintiff,

v.      Case No:   8:16-cv-333-T-CM

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

## OPINION AND ORDER

Plaintiff April Young, on behalf of D.Y., a minor, appeals the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying her child's claim for Supplemental Security Income ("SSI"). For the reasons discussed herein, the decision of the Commissioner is AFFIRMED.

### I.   Issue on Appeal

Plaintiff raises one issue on appeal:[1] whether the Administrative Law Judge ("ALJ") failed to fully and fairly consider or develop the evidence of record.

### II.   Procedural History and Summary of the ALJ's Decision

On April 10, 2012, Plaintiff filed an application for SSI on behalf of her minor child, D.Y., born on August 10, 2006, alleging disability that began on April 1, 2012

---

[1] Any issue not raised by Plaintiff on appeal is deemed to be waived. *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004) ("[A] legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed.").

due to Attention Deficit Hyperactivity Disorder ("ADHD"), asthma, allergies, and stomach issues. Tr. 77, 87, 162-67. The Social Security Administration denied the claim initially on June 28, 2012 and upon reconsideration on August 28, 2012. Tr. 77-105; 110-115. Plaintiff then requested and received a hearing before ALJ Erik Eklund on May 6, 2014, during which she was represented by an attorney. Tr. 41; 116-18. Plaintiff and D.Y. testified at the hearing.[2] Tr. 41-75.

On May 28, 2014, the ALJ issued a decision finding D.Y. is not disabled and denying his claim. Tr. 24-36. The ALJ first determined that D.Y. has not engaged in substantial gainful activity since April 10, 2012, the application date. Tr. 27. Next, the ALJ found D.Y. has the following severe impairments: attention deficit hyperactive disorder, asthma, allergies, headaches, and gastrointestinal issues. *Id.* At step three, the ALJ found D.Y. "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1." *Id.*

Taking into account all relevant evidence, the ALJ then determined D.Y. did not have an impairment or combination of impairments that results in either "marked" limitation in two domains of functioning, or "extreme" limitation in one domain of functioning, as is required to functionally meet a listing. Tr. 25-36; 20

---

[2] The ALJ stated he wanted to question D.Y. to get a sense of what he is like. Because the child was seven years old at the time and the ALJ found that would likely be too young to understand the seriousness of the proceedings, the ALJ did not swear in the child before he testified. Tr. 44-45.

C.F.R. § 416.926a(d).  Accordingly, the ALJ found D.Y. is not disabled, and denied his claim.  Tr. 27.

Following the ALJ's decision, Plaintiff filed a request for review by the Appeals Council, which was denied on December 11, 2015.  Tr. 1-3.  Thus, the ALJ's May 28, 2014 decision is the final decision of the Commissioner.  Plaintiff filed an appeal in this Court on February 11, 2016.  Doc. 1.  Both parties have consented to the jurisdiction of the United States Magistrate Judge, and this matter is now ripe for review.  Docs. 15; 17.

### III. Social Security Act Eligibility and Standard of Review

An individual under the age of eighteen is disabled for purposes of seeking child SSI benefits when he has a medically determinable physical or mental impairment which results in marked and severe functional limitations and can be expected to either result in death or last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(C)(i).  The Commissioner has established a three-step sequential analysis for evaluating a claim of disability for a child.  To qualify for benefits, the child claimant must show that: (1) he is not engaging in substantial gainful activity; (2) he has an impairment or combination of impairments that is severe; and (3) his impairment or combination of impairments meets, medically equals, or functionally equals a listed impairment.  20 C.F.R. § 416.924(a).

At step three, the Commissioner determines whether the claimant has an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix

1. If not, the Commissioner decides whether it results in limitations that functionally equal the listings. 20 C.F.R. § 416.926a(a). In determining whether an impairment or combination of impairments functionally equals the listings, the Commissioner assesses the claimant's functioning in terms of six domains: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being. 20 C.F.R. § 416.926a(b)(1). To functionally equal the listings, the claimant's impairment or combination of impairments must result in "marked" limitations in two domains of functioning or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(d). A "marked limitation" in a domain results when the child's impairment(s) "interferes seriously" with the ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). An "extreme limitation" in a domain results when the child's impairment(s) interferes "very seriously" with his ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(3).

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards and whether the findings are supported by substantial evidence. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988) (citing *Richardson v. Perales*, 402 U.S. 389, 390 (1971)). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla, *i.e.*, evidence that must do more than create a suspicion of the existence of the fact to be established, and such

relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (internal citations omitted); *see also Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (finding that "[s]ubstantial evidence is something more than a mere scintilla, but less than a preponderance") (internal citation omitted).

The Eleventh Circuit has restated that "[i]n determining whether substantial evidence supports a decision, we give great deference to the ALJ's fact findings." *Hunter v. Soc. Sec. Admin., Comm'r,* 808 F.3d 818, 822 (11th Cir. 2015) (citing *Black Diamond Coal Min. Co. v. Dir., OWCP,* 95 F.3d 1079, 1082 (11th Cir. 1996)). Where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the preponderance of the evidence is against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). "The district court must view the record as a whole, taking into account evidence favorable as well as unfavorable to the decision." *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (stating that the court must scrutinize the entire record to determine the reasonableness of the factual findings).

## IV. Discussion

*Whether the ALJ failed to develop or consider the evidence of record*

Plaintiff contends that the ALJ failed to fully and fairly develop the record and consider the evidence of record. Plaintiff points to the opinion of consultative

examiner Nicholas Gehle, PsyD, in which Dr. Gehle recommended that D.Y. be reassessed in the future to continue to monitor his cognitive ability with regard to D.Y.'s IQ score, and in which Dr. Gehle deferred a formal diagnosis of borderline intellectual functioning due to the impact of D.Y.'s ADHD and development. Doc. 24 at 8. Plaintiff argues that the ALJ erred in not ordering additional testing, as recommended by Dr. Gehle. *Id.* In response, the Commissioner argues that the regulations do not mandate the ALJ to order a consultative examination when, as here, there is sufficient evidence in the record to enable the ALJ to render a decision. Doc. 27 at 15-21. Moreover, the Commissioner argues, Plaintiff fails to show that she was prejudiced by the ALJ's decision not to order a consultative psychological examination. *Id.* As explained below, the Court finds Plaintiff's argument to be without merit.

It is well established that the ALJ has a duty to develop a full and fair record. *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003); *Graham v. Apfel,* 129 F.3d 1420, 1422-23 (11th Cir. 1997) (the ALJ has an affirmative duty to develop the record fully and fairly). As the Supreme Court has stated, "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). In determining whether the ALJ failed in his duty to develop the record, the Court is "guided by whether the record reveals evidentiary gaps which result in unfairness or 'clear prejudice'" necessitating a remand to the Commissioner for further development of the record. *Graham*, 129 F.3d at 1423

(citing *Brown v. Shalala*, 44 F.3d 931, 934-35 (11th Cir. 1995)).  If the record was sufficient for the ALJ to evaluate a claimant's impairments and functional abilities and does not show the kind of gaps in the evidence necessary to demonstrate prejudice, there is no error and the Commissioner's decision must stand.  *See id*.

After a review of the ALJ's decision and the evidence of record, the Court finds the ALJ applied the correct legal standards and his decision is supported by substantial evidence.  The record does not show the kind of gaps in the evidence necessary to demonstrate prejudice, nor has Plaintiff explained how the record was insufficient to enable the ALJ to evaluate D.Y.'s impairments and functional abilities.  To the contrary, the Court finds the record, as discussed chronologically below,[3] contains sufficient evidence to support the ALJ's findings in the six functional domains.

In reaching his decision, the ALJ assessed D.Y.'s functioning in the six functional equivalence domains and determined that D.Y. has less than marked limitations in acquiring and using information, attending and completing tasks, interacting and relating with others, ability to care for himself, and health and physical well-being; and no limitation in moving about and manipulating objects.  Tr. 30-35.  As to the first two domains, the ALJ explained that D.Y.'s medical records and school grades reflect improvement in function after the start of medication.  Tr.

---

[3] Plaintiff's brief states "the statements of the testimony and of the documentary evidence as set forth in the ALJ's decision (Tr. 21-40) are accepted by the Plaintiff and incorporated, as if fully presented herein, except as specifically alluded to, accepted, or explained upon, below."  Doc. 24 at 3.  Plaintiff makes no mention of any issues related to D.Y.'s asthma, allergies, or gastrointestinal issues; accordingly, the Court does not discuss them.

28-29, 31-32.  The ALJ noted that even prior to medication D.Y. never failed a grade and demonstrated improvement in written communication and mathematics.  Tr. 31-32.  Regarding D.Y.'s limitation in interacting and relating with others, the ALJ noted that despite a report from D.Y's kindergarten teacher, Sandra Bennett, indicating a serious problem in this area, the record reflects D.Y. is not mean or aggressive, has a positive attitude, is cooperative, and has little, if any, difficulty communicating.  Tr. 29, 33. 211.  Regarding the fourth domain – moving about and manipulating objects – the ALJ found no evidence in the longitudinal pediatric and specialist medical record to support limitations, despite Ms. Bennett's report of "obvious problems" in this area.  Tr. 34, 212.  Regarding D.Y.'s ability to care for himself, the ALJ noted that Plaintiff and D.Y. reported D.Y. can perform most aspects of personal care, and the record did not suggest otherwise.  Tr. 35.  Lastly, regarding D.Y.'s health and well-being, the ALJ explained that the record supports longitudinal and ongoing medication use and doctor visits to control D.Y.'s symptoms; however, his overall good functioning and grades with medication suggested to the ALJ less than marked limitations in this area.  Tr.35.  Plaintiff does not specifically address the ALJ's findings in the six domains, but the record evidence supports these findings.  Doc. 24.

The relevant medical evidence supporting the ALJ's findings as to the six domains begins on April 2, 2012, when Rosalinda Tiongco, ARNP, assessed D.Y. with ADHD, inattentive type, and prescribed him medication for it.  Tr. 358.  On June 4, 2012, D.Y.'s kindergarten teacher, Ms. Bennett, completed a Teacher Questionnaire.

Tr. 208-22. Ms. Bennett stated that she taught D.Y in kindergarten for all subjects and had known D.Y. for eleven months. Tr. 208. She further stated that D.Y. was on level in reading, math, and written language. *Id.* Ms. Bennett compared D.Y.'s functioning to that of same-aged children who did not have impairments and gave her opinion as to D.Y.'s impairments in the six domains as follows.[4] Tr. 208-15. In the area of acquiring and using information, she rated D.Y. with having "a serious problem" in each of the activities listed and explained that he "[d]oesn't do work independently; gets extra help daily." Tr. 209. In the area of attending and completing tasks, Ms. Bennett rated D.Y. with a very serious problem on a daily basis in each of: sustaining attention, focusing long enough to finish an assigned activity or task, refocusing to task when necessary, carrying out multi-step instructions, organizing his own things or school materials, completing work accurately without careless mistakes, and working at reasonable pace/finishing on time. Tr. 210. She rated D.Y. with a serious problem paying attention when spoken to directly, carrying out single-step instructions, and completing class and homework assignments. *Id.* She then indicated that D.Y. had no problem waiting to take turns, changing from one activity to another without being disruptive, and working without distracting self or others. *Id.* She gave no examples nor explained her reasoning for her opined impairments in this domain. *See id.*

In the area of interacting and relating with others, Ms. Bennett indicated that,

---

[4] Except where noted she "wrote" or "explained," all of Ms. Bennett's opinions were expressed by checking off the options in the questionnaire.

on a daily basis, D.Y. had a serious problem making and keeping friends and seeking attention appropriately. Tr. 211. She also indicated D.Y. had an obvious problem following rules in the classroom, games, and sports. *Id.* She opined D.Y. had a slight problem playing cooperatively, expressing anger appropriately, asking permission appropriately, respecting/obeying adults in authority, relating experiences and telling stories, using language appropriate to the situation and listener, introducing and maintaining relevant and appropriate topics of conversation, taking turns in a conversation, interpreting meaning of facial expression and body language, and using adequate vocabulary and grammar to express thoughts and ideas in everyday conversation. *Id.* Ms. Bennett indicated it had not been necessary to implement behavior modification strategies for D.Y., and she wrote, "not an independent child!" Tr. 211.

Ms. Bennett also noted she could understand very little of D.Y.'s speech on the first attempt when the topic of conversation was known or unknown or even after repetition or rephrasing. Tr. 212. In the area of moving about and manipulating objects, Ms. Bennett indicated that, on a daily basis, D.Y. had an obvious problem moving his body from one place to another; moving and manipulating things; demonstrating strength, coordination, and dexterity in activities or tasks; managing pace of physical activities; showing a sense of his body's location and movement in space; integrating sensory input with motor output; and planning, remembering, and executing controlled motor movements. Tr. 212. In the area of caring for himself, Ms. Bennett noted a slight problem in D.Y.'s handling of frustration appropriately,

being patient when necessary, using appropriate coping skills to meet daily demands of school environment, and knowing when to ask for help. Tr. 213. As for D.Y.'s health and well-being, Ms. Bennett stated that D.Y.'s allergies bother him daily, but she did not know if D.Y. took prescribed medication. Tr. 214.

The ALJ gave Ms. Bennett's opinion limited weight. Tr. 29. In so doing, he noted, "[n]otwithstanding the lack of specific examples, the opinion came prior to the start of medication which . . . reflected a significant improvement in symptoms and limitations." *Id*. Plaintiff does not specifically challenge the weight given to Ms. Bennett.[5] Nevertheless, the ALJ discussed the medications and D.Y.'s improvement due to them, which the Court will also discuss *infra*. *Id*.

On June 12, 2012, D.Y. visited Dr. Gehle for a consultative evaluation. Tr. 388-92. At the time, D.Y. was five years old. Tr. 388. Dr. Gehle's general observations of D.Y. were that D.Y. did not display any significant problems with motor functioning. Tr.388. D.Y.'s speech was slow, and the quality of his speech was soft. He was alert, had adequate eye contact, and had a positive attitude. *Id*. D.Y. was able to answer most questions presented but relied on his father for specific information and dates. *Id*. Overall, however, D.Y.'s behavior during the evaluation was remarkable for distractibility. *Id*. Dr. Gehle noted it was reported D.Y. was able to bathe, dress, and toilet independently. Tr. 389. He also noted D.Y.'s grades

---

[5] Plaintiff makes a rote notation that "the assessment of the claimant's kindergarten teacher was given limited weight, again because it came prior to the start of medication" without any discussion, analysis, or supporting authority whether it was error for the ALJ to do so. Doc. 24 at 9. Accordingly, the argument whether the ALJ erred in giving limited weight to Ms. Bennett's assessment is deemed waived. *See* note 1, *supra*.

were reported as "poor" but he had not repeated any grades and was not involved in special education classes. *Id.* On the mental status evaluation, D.Y.'s general thought processes were coherent, logical, and goal-directed. *Id.* His thought form and content were age appropriate and unremarkable. *Id.* His visual and auditory attention were at an age appropriate level. Tr. 389. D.Y.'s sustained attention was remarkable for deficits secondary to inattention, and his speed of processing was impaired. *Id.* D.Y.'s receptive language, expressive language, and recent memory were adequate. Tr. 390. His motor coordination was age-appropriate. *Id.* His judgment related to self-care and social problem-solving was adequate. *Id.*

Dr. Gehle administered the Wechsler Preschool and Primary Scale of Intelligence-Third Edition (WPPSI-III) and Wechsler Individual Achievement Test-Third Edition (WIAT-III). Tr. 390-91. Dr. Gehle opined D.Y. put forth his best effort on the tests and the test results were valid, but D.Y. "appeared distracted and unfocused at times as evidenced by looking away during testing, staring at the wall/picture, an[d] not attending to directions." Tr. 390. On the WPPSI-III, D.Y. received a verbal score of 74 (Borderline), a performance score of 81 (Low Average), a Processing Speed of 100 (Average), and a full scale IQ score of 77, which placed D.Y. in the in the borderline range of intellectual functioning. *Id.*

On the WIAT-III, D.Y. received all Below Average scores: an oral language score of 75, a written expression score of 88, and mathematics score of 79. Tr. 391. Dr. Gehle opined that, compared with D.Y.'s learning potential, his achievement scores were not "statistically significant and a specific learning disability was not

- 12 -

found." Tr. 391. Dr. Gehle diagnosed attention-deficit/hyperactivity disorder, predominantly inattentive type (Tr. 391).

Dr. Gehle summarized his findings as follows:

> While [D.Y.'s] Full Scale IQ fell in the Borderline range, the diagnosis on Axis II (Borderline Intellectual Functioning) is deferred at this time due to the impact that [D.Y.'s] ADHD and development have on his measured cognitive ability. It would be recommended that [D.Y.] be reassessed in the future to continue to monitor his cognitive ability. [D.Y.'s] overall presentation appeared valid and consistent with the reported conditions. The symptoms based on claimant report and clinical observations appear to be moderately impacting activities of daily living, academic performance, and interpersonal interactions. Current prognosis for [D.Y.] is fair with treatment.

*Id.* The ALJ gave limited weight to Dr. Gehle's opinion regarding D.Y.'s moderate limitations in activities of daily living, academic performance, and interpersonal interactions. Tr. 29. The ALJ noted that Dr. Gehle failed to define "moderate," but "[n]evertheless, Dr. Gehle examined [D.Y.] only once. Moreover, he did not have the benefit of subsequent evidence, which showed improvement in functioning and grades following treatment." Tr. 29. Plaintiff does not specifically challenge the weight given to this portion of Dr. Gehle's opinion, [6] but rather argues that the ALJ erred in not ordering an additional consultative evaluation. *See* Doc. 24. The Court, however, agrees with the Commissioner's contention that Dr. Gehle's recommendation does not support an argument that the ALJ could not reach an informed decision without ordering an additional consultative examination. Doc. 27

---

[6] Plaintiff points out that the ALJ gave Dr. Gehle's opinion "diminish[ed]" weight; however provides no discussion, analysis, or supporting authority whether it was error for the ALJ to do so. Doc. 24 at 9. Accordingly, the argument whether the ALJ erred in giving limited weight to Dr. Gehle's opinion is deemed waived. *See* note 1, *supra*.

at 15. As the ALJ's decision points out, medical records after Dr. Gehle's examination, D.Y.'s report cards, and hearing testimony provided enough information for the ALJ to make an informed decision.

The medical records relied upon by the ALJ in support of his findings come primarily from Advanced Registered Nurse Practitioner "ARNP" Tiongco and Melanie Rodriguez, MS, CCC-SLP. D.Y. saw ARNP Tiongco on June 14, 2012 for his six-week follow-up after she diagnosed him with ADHD in April 2012. Tr. 419-21. D.Y.'s father reported that D.Y. was "focusing well," "staying on task," and had not been aggressive. Tr. 419. Overall, D.Y.'s father reported no concerns that day. *Id.* On examination, D.Y. was alert and oriented; his speech, language, and memory for recent and remote events were intact; and his fund of knowledge was age appropriate. *Id.* ARNP Tiongco diagnosed ADHD, controlled. Tr. 420.

On August 13, 2012, D.Y., six years old at the time, presented to Melanie Rodriguez, MS, for a speech/language evaluation at the state agency's request. Tr. 394-96. Ms. Rodriguez noted that D.Y.'s articulation, voice, and fluency were all within normal limits. Tr. 396. D.Y. presented as a shy and quiet boy who exhibited adequate attention and eye contact. *Id.* He primarily spoke in six word sentences and did not elaborate on his thoughts and ideas. *Id.* He responded to questions appropriately but his responses also were short in nature. *Id.* The examiner noted that D.Y. followed complex directions without cues and demonstrated understanding of a variety of linguistic concepts such as location, sequence, and spatial. *Id.* He exhibited adequate turn taking skills and joint attention. Ms. Rodriguez noted that,

overall, D.Y. communicated effectively with the use of sentences and presented with well-developed nonverbal skills. *Id.* Ms. Rodriguez's diagnosis was that D.Y. did "exhibit language/articulation/phonological skills commensurate to chronological/developmental age." *Id.*

The following month, on September 13, 2012, D.Y. presented to ANP Tiongco again for a neurologic follow-up. Tr. 416-18. On examination, he appeared alert and oriented, friendly, cooperative, and attentive. Tr. 417. His speech, language, and memory for recent and remote events were intact. *Id.* He was tolerating his medicine "very well," however, it seemed to be working mostly for the first few hours of the day because he was losing concentration at the end of the day and was having difficulty completing his homework. *Id.* ARNP Tiongco diagnosed ADHD, currently not well controlled, with some wearing off effect towards the end of the day, and she changed D.Y.'s medication. Tr. 417-18. Notes from a follow-up visit in November 27, 2012 also state that D.Y. was doing well at school but was not focusing during homework time; the examination results and diagnosis remained the same as the September visit. Tr. 413-15. During D.Y.'s February 27, 2013 follow-up visit, his father reported D.Y. had been doing well at school but not focusing during homework time, so he gave D.Y. a second dosage of ADHD medication around 3:00 p.m. Tr. 410. The examination results and diagnosis remained unchanged from the previous two visits, and ARNP Tiongco increased D.Y.'s medication dosage. Tr. 411-12.

During D.Y.'s visits with ARNP Tiongco for the following year, there were no

complaints reported by either of his parents. Tr. 398-409. The treatment notes show improvement in D.Y.'s attention, concentration, behavior, and academics since the adjustment of his medication in February 2012 through February 25, 2014, which is the last record on file before his hearing. *Id.* Throughout this time period, he was tolerating his medication without any side effects. Tr. 398, 401, 404, 407, 410. On May 20, 2013, Plaintiff reported D.Y. had been doing "well behaviorally." Tr. 407. D.Y. had been reported to "focus, concentrate and stay on task", although he had problems with comprehension, such as reading but not understanding the content he read. *Id.* On August 5, 2013, D.Y.'s father reported there had been no behavioral complaints. Tr. 404. On November 5, 2013, D.Y.'s father reported D.Y. had been "focusing, concentrating, and staying on task," had been doing "well behaviorally", and there were no complaints from D.Y.'s teachers. Tr. 401. On February 25, 2014, Plaintiff reported D.Y. had been "listening and following through with instructions very well." Tr. 398. D.Y. had not been forgetful or easily distracted. *Id.* He had been "completing his school work[] and homework[] without any difficulties," and he had "been doing very well academically." *Id.* Moreover, Plaintiff reported that D.Y. had been initiating and maintaining good attention. *Id.* The examination results during each of these visits showed D.Y. was alert, attentive, cooperative, and oriented. Tr. 399, 402, 405, 408, 411. His speech, language, and memory for recent and remote events were intact, his fund of knowledge was age appropriate, and he was friendly. *Id.* ARNP Tiongco diagnosed ADHD, controlled during each of these visits. Tr. 399, 402, 405, 408.

D.Y.'s report cards corroborate his parents' reports to ARNP Tiongco of D.Y.'s improvement with the ADHD medication. His kindergarten report card from the 2011-12 school year shows D.Y. had below level performance for the second and third quarters in reading, written communication, and mathematics – the latter two improving to on level performance by the fourth quarter. Tr. 268. Although he needed improvement on some of the other remaining subjects during the second and third quarters, D.Y.'s performance was satisfactory in all other subjects by the fourth quarter. *Id.* His report card also shows that, behaviorally, D.Y. needed improvement in listening attentively and completing homework assignments on time. *Id.* D.Y.'s first grade report card for the 2012-13 academic year shows that, except for being below level on reading on the first quarter, he was on level in reading, written communication, and mathematics all year. Tr. 267. For the first three quarters of this academic year, he received either satisfactory or excellent remarks for the remaining subjects of science/health, social studies, art, music, and physical education; he completed the fourth quarter with excellent remarks in each subject. *Id.* D.Y.'s second grade report card contains information through the first two quarters of the 2013-14 school year. Tr. 251-52. D.Y.'s student performance for reading, written communication, and mathematics was on level for both quarters. Tr. 252. He needed improvement in academic progress for reading, written communication, and science/health in the first quarter; however, during the second quarter his academic progress was satisfactory in those subjects. *Id.* D.Y.'s academic progress in all other subjects was excellent or satisfactory both quarters.

*Id.* Neither of D.Y.'s first grade or second grade report card indicated D.Y. needed improvement in any area of "Expected Behaviors." Tr. 251, 267. Nor did D.Y.'s report cards show any disciplinary history from 2011 through 2014. Tr. 257.

Plaintiff argues that the ALJ erroneously relied on the medical records versus Plaintiff's testimony. Doc. 24 at 10. As noted, the reports of improved focus and concentration, better behavior, and improved academic performance reflected in the medical records were made by Plaintiff or her husband. Tr. 398, 404, 407, 410, 419. During the hearing, however, Plaintiff testified that D.Y. has difficulty focusing and finishing tasks, and that he needs constant supervision and frequent reminders to complete tasks. Tr. 72. Plaintiff argues that the ALJ's reliance on the medical records containing the subjective unsworn impressions of the parents versus the sworn testimony of Plaintiff is "inherently flawed" in this case. Doc. 24 at 10. Plaintiff, however, offers no authority to support this proposition. The ALJ noted the mother's hearing testimony and later explained that the "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." Tr. 28. It is the function of the Commissioner, and not the courts, to resolve conflicts in the evidence and to assess the credibility of the witnesses. *Lacina v. Comm'r, Soc. Sec. Admin.*, 606 F. App'x 520, 525 (11th Cir. 2015) (citing *Grant v. Richardson*, 445 F.2d 656 (5th Cir. 1971)).

Plaintiff also argues that the ALJ erred in not mentioning in his decision D.Y.'s testimony that he was given extra time for school work and testing when he did not

complete assignments on time.[7]  Doc. 24 at 10; *see also* Tr. 56-57.  As noted, the ALJ found D.Y. had less than marked limitation in the domain of attending and completing tasks, and explained that finding.  "[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision" so long as the Court is able to conclude, as it does here, that the ALJ considered the condition as a whole.  *Dyer*, 395 F.3d at 1211.

Based on a thorough review of the ALJ's opinion and the record as a whole, there is substantial evidence to support the ALJ's determination of D.Y.'s impairments and that he fully and fairly developed the record and considered the evidence therein.  Plaintiff has failed to demonstrate evidentiary gaps in the record which have resulted in clear prejudice sufficient to justify a remand in this case.  *See Graham*, 129 F.3d at 1423.

## V. Conclusion

The undersigned concludes that the ALJ applied the proper legal standards, and his determination that D.Y. is not disabled is supported by substantial evidence.

ACCORDINGLY, it is hereby

**ORDERED**:

1. The decision of the Commissioner is **AFFIRMED**.

1. The Clerk of Court is directed to enter judgment pursuant to sentence four of

---

[7] Plaintiff's last argument rests on her questioning the value of the report cards as proof of D.Y.'s improvement.  She argues, "[g]rades on a report card are certainly subjective and without the personal insight of the grader, as opposed to the comments and extensive questionnaire completed by Ms. Bennett."  Doc. 24 at 11.  Notwithstanding the lack of any authority cited for this proposition, the Court finds this argument without merit for the same reasons explained by the Commissioner in her brief.  *See* Doc. 27 at 20-21.

42 U.S.C. § 405(g) in favor of the Commissioner, and close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on this 31st day of March, 2017.

*[signature]*

CAROL MIRANDO
United States Magistrate Judge

Copies:
Counsel of record